# EXHIBIT A

# J A M S ARBITRATION
## 1410005474

STEVEN BRANNUM
Claimant,

and

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE)
Respondent.

---

## **FINAL AWARD**

**Counsel**:
David Wachtel, Esq.
Andrea Loveless, Esq.
Bernabei & Wachtel
1775 T Street, NW
Washington DC  20009
(202) 745 1942
*Counsel for Claimant*

Damien G. Stewart, Esq.
Anne English, Esq.
Fannie Mae
3900 Wisconsin Avenue NW
Washington DC  20016
(202) 752 6871
*Counsel for Respondent*

**Arbitrator**:
Jerry P. Roscoe
JAMS, The Resolution Experts
555 13th Street, NW
Washington DC  20004

**Place of Arbitration:** Washington DC

**Date of Final Award:** December 30, 2011

THE UNDERSIGNED ARBITRATOR, having been designated in accordance with Claimant's Demand for Arbitration dated January 5, 2011, filed with JAMS and with Respondent pursuant to Respondent's Dispute Resolution Policy (DRP) effective March 16, 1998, finds, concludes and issues this Final Award as follows:

## I.    Introduction and Procedural Statement

Claimant Brannum, a graduate of Ballou High School, Cornell University, and the Wharton School, began his employment with Respondent in 2002. In 2009, he was one of three African-American members of the Public Entities Loan Team, all three of whom were terminated.

Claimant demanded arbitration pursuant to Respondent's Dispute Resolution Policy. Respondent filed an Answer with Affirmative Defenses as its response.

The Arbitrator entered a Proposed Scheduling Order and Discovery Plan on March 3, 2011. By agreement of the parties, an Amended Scheduling Order and Discovery Plan establishing procedures for the arbitration issued on June 13, 2011. The parties exchanged information and conducted depositions. The Arbitrator resolved discovery disputes by written Orders dated June 13, 2011 and October 20, 2011.

The arbitration hearing was conducted on October 24 - 28 and 31, 2011. Each side offered documentary evidence at the hearing, and such evidence was admitted. Each side called witnesses and cross-examined opposing witnesses. The hearing was reported by Mary Grace Castleberry, a Notary Public in and for the District of Columbia.

At the conclusion of the presentation of evidence, the parties stated that they had no further evidence to offer. Post hearing briefs were submitted on November 23, 2011. Sufficient time having elapsed for objections to transcripts, briefs or evidence, the hearing was deemed closed on November 30, 2011 and the matter was submitted for decision on that date, with the Final Award to issue on or before December 30, 2011.

## II.    Facts

The following is a statement of those facts found by the Arbitrator to be true and necessary to the Award. To the extent that this recitation differs from any party's position, that is the result of determinations as to credibility, determinations of relevance, burden of proof considerations, and the weighing of the evidence, both oral and written.

Claimant's first position with Fannie Mae was as a member of the Public Entities team under Mr. Wayne Curtis. His primary task was doing underwriting on "Community Express" ("CE") deals. Community Express was a loan program to fund public entities such as municipalities, cities, states, public housing authorities and public housing finance agencies. Working under Monica Gardner and Wayne Curtis, Claimant was a

2

Senior Business Manager whose duties enabled him to use his analytical, accounting, statistics, marketing, computer and presentation skills.

The time period most relevant to this arbitration begins in late 2006 and early 2007, when Senior Vice President Jeff Hayward reorganized his business teams and moved the Community Express group into the Public Entities ("PE") group led by Mr. Carl Riedy. Mr. Riedy, previously the head of Acquisition, Development and Construction lending (AD&C lending), had begun his leadership of the Public Entities group when he swapped duties with Wayne Curtis in late 2005.

The Public Entities group was starting to do all of the Community Lending. Since "Community Express" was a loan product for municipalities and other public agencies, Mr. Hayward felt it better consolidated with the housing finance agency business which was public, and the "Modernization Express," another loan product market to public housing authorities. The borrowers for Community Express and Modernization Express were often the same entities.

As part of the reorganization, Eileen Neely, who had worked under Wayne Curtis, was transferred under Mr. Riedy's management. When the Community Express product was added to her portfolio of responsibility, she added, among others, Claimant, Maria Day-Marshall, and Russell Atta-Safoh to her team. At this time, Claimant had been on rotation in California. Mr. Hayward was concerned that Claimant's rotation time in California had not been productive and approached Eileen Neely to bring Claimant back to Washington DC to be a part of her Community Express team. By all indications, the management in California had viewed Claimant as very capable. However, the record reflected the impression that Claimant lacked certain learn people and management skills.

It is clear that Ms. Neely was impressed with Claimant's quantitative and analytical skills. He solidified the underwriting criteria as well as the pricing methodology for the Community Express. Ms. Neely hoped that Claimant would bring consistency to the CE product, a product marketed, sourced, and closed by both Washington DC staff and professionals in the field, known as Community Business Centers ("CBC" also referred to as the Community Development "CD" team). When proposed deals came in from a CBC, it was part of Claimant's responsibility to see that the proposed loan transaction met Respondent's criteria. In 2007, CBC professionals were identifying and sourcing potential deals but were relying on the Washington DC PE team to make those opportunities real.

In 2007, Eileen Neely, Director of Community Development (and, hence CBC's) Beverly Wilbourn, and Carl Riedy developed a business plan that fully integrated the community business centers' business. This quest for increased efficiency was made more relevant by the economic crisis that developed in the United States during 2008. Part of Carl Riedy's 2008 performance evaluation goal was to create an integrated business team that included CBC employees around the country and the Washington based PE loan team.

3

As part of the consolidation, members of the two teams mentored each other. Shortly thereafter, Mr. Riedy and Ms. Neely and ultimately, Ms. Wilbourn, discussed making cuts to the team. As the economic crisis worsened, Respondent's senior management began discussing the need for corporate-wide efficiencies. When advised of lower management's plans to reduce staffing levels, senior management asked lower management to withhold staffing reductions until early 2009, when a company-wide policy could be implemented.

As a result, 380 employees were riffed in January 2009, among who were Claimant, Russell Atta-Safoh and Maria Day-Marshall. This decision was made as a result of the inefficiencies created by having two marketing teams evolve to the extent that they had duplicative skill sets. In addition, certain team responsibilities were either outsourced or spun off to other of Respondent's management areas. Pricing was handled by first portfolio management and then the pricing group within Community Lending. As a result, Complainant's strengths, pricing and underwriting, although significant, became relatively less important.

There was considerable testimony as to the relative strengths and weaknesses of the employees terminated and those who were retained. In every instance, the testimony from multiple witnesses supported the finding that the employees retained had qualifications that supported the decision to retain them, particularly relative to Claimant, and that race was never a factor in any of the decisions to terminate any of Respondent's employees.

The only testimony with regard to overt race discrimination or animus was that Carl Riedy did not associate as much with the PE loan team as with other teams. This testimony was inconclusive as to whether the associations referred to were significant, were intentional, were based on business need, or were in any material way related to race.

### III. Ruling

As Claimant bears the burden of proof by a preponderance of the evidence, the Arbitrator hereby finds in favor of Respondent as to all allegations raised by Claimant in this proceeding.

This award resolves all claims between the parties submitted for decision in this proceeding.

DATED:     December 30, 2011

Jerry P. Roscoe
Arbitrator

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Brannum, Steven / Fannie Mae
Reference No. 1410005474

I, Veronica Wightman, not a party to the within action, hereby declare that on December 30, 2011 I served the attached Final Award on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Washington, DISTRICT OF COLUMBIA, addressed as follows:

David Wachtel Esq.
Ms. Andrea Loveless
Bernabei & Wachtel, PLLC
1775 T Street, NW
Washington, DC  20009
Tel: 202-745-1942
Email: wachtel@bernabeipllc.com
Loveless@bernabeipllc.com
   Parties Represented:
   Mary Grace Castleberry
   Sarah Fehm
   Steven Brannum

Madonna McGwin Esq.
Fannie Mae
3900 Wisconsin Ave., NW
M.S 1H-2S/05  Room #3221
Washington, DC  20016-2892
Tel: 202-752-8485
Email: madonna_a_mcgwin@fanniemae.com
   Parties Represented:
   Fannie Mae

Damien G. Stewart Esq.
Fannie Mae
Legal Dept./Employment Practices
3900 Wisconsin Ave., NW
Washington, DC  20016-2892
Tel: 202-752-6871
Email: damien_g_stewart@fanniemae.com
   Parties Represented:
   Fannie Mae

I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington, DISTRICT OF COLUMBIA on December 30, 2011.

*[signature]*

Veronica Wightman
vwightman@jamsadr.com